

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2008

# Alexandra v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2849

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Alexandra v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1223.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**IMG-089** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2849

_____

JOHANS ALEXANDRA,
                    Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                    Respondent

_____

On Review of a Decision of the
Board of Immigration Appeals
(Agency No. 79-734-450)
Immigration Judge: Honorable Rosalind K. Malloy

_____

Submitted Under Third Circuit LAR 34.1(a)
May 14, 2008

Before: BARRY, SMITH and HARDIMAN, Circuit Judges

Opinion filed: May 14, 2008

_____

OPINION

_____

PER CURIAM

    Petitioner, Johans Alexandra, petitions for review of a final order of the Board of

Immigration Appeals ("BIA").  For the reasons that follow, we will deny the petition.

Alexandra is a native and citizen of Indonesia who entered the United States on September 13, 2000, on a non-immigrant visa. Alexandra remained beyond his authorized period and was served with a Notice to Appear on March 20, 2003, charging him as an overstay in violation of section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). Alexandra, through counsel, conceded the removal charge and sought relief on December 2, 2003 in the form of asylum, withholding of removal and protection under the Convention Against Torture ("CAT"), claiming that he had suffered persecution in the past on account of his ethnicity (Chinese) and religion (Catholic), and that he fears persecution in the future.

In an Oral Decision and Order issued on February 7, 2006, the Immigration Judge ("IJ") denied Alexandra the relief requested, but granted him voluntary departure. The IJ concluded that petitioner's asylum application was untimely filed, and that the explanations offered (i.e., he did not speak English and was ignorant of the asylum process) did not amount to extraordinary circumstances sufficient to excuse the delay. Accordingly, Alexandra was only eligible to pursue his applications for withholding of removal and CAT relief. To that end, the IJ recounted the various incidents that petitioner relied upon to support his claims.

Initially, petitioner asserted that, since "his father's era," there has been discrimination of the ethnic Chinese in Indonesia. In response to a request for specific incidents experienced by him personally, Alexandra alleged that he was frequently

harassed by native Indonesians who approached him on the street asking for money. Petitioner recounted the earliest incident of harassment that he could remember, stating that a friend of his was punched by a few Muslim students when they were in Junior High School for refusing to give up money. On other occasions, gangs of ethnic Indonesians would stop in front of his house and demand money while threatening to burn his house down if he did not give it to them. On no occasion, however, was petitioner ever physically injured. Finally, Alexandra testified that he had owned a small grocery store which he eventually had to close because of financial problems, including the high taxes that were imposed by the government.

While finding no credibility problems with Alexandra, the IJ nonetheless concluded that the actions taken against petitioner – even if asserted in a timely filed asylum petition – did not fall within the contours of the law regarding persecution. The IJ recounted Alexandra's testimony that he was never harmed on account of his ethnicity or his religion, nor was he ever prevented from practicing his religion. The IJ further placed emphasis on a submission by petitioner's father which indicated that Alexandra came to the United States to find work after his grocery store went bankrupt. To this the IJ factored in petitioner's testimony that all of his family members (including his four siblings and his adult son born of his first marriage) were ethnic Indonesians and Christian, with some being Catholic, and that all remained in Indonesia without having suffered any harm on account of a protected ground. Finally, the IJ noted that, while

3

problems still remained and extremist Muslims still exist, the government of Indonesia has taken steps to fully integrate the Chinese population into Indonesian society and has recognized Catholicism as one of the five major religions in that country. Accordingly, the IJ concluded that she could not find that Alexandra suffered past persecution, nor did he demonstrate that there is a clear probability he would be harmed upon return to Indonesia. Given the total lack of any allegations of torture, his CAT request was denied as well. Petitioner was, however, granted voluntary departure.

The BIA affirmed the IJ's decision. The BIA first noted that Alexandra did not challenge on appeal the IJ's determination that his asylum application was untimely filed. The BIA, citing to this Court's decision in Lie v. Ashcroft, 396 F.3d 530 (3d Cir. 2005), noted its agreement with the IJ's determination that the events petitioner described do not reach the level of past persecution nor establish a clear probability that Alexandra would be harmed in Indonesia on account of his ethnicity or religion. The BIA further concluded that Alexandra offered no controlling precedential decision to support his position that there is currently a pattern or practice of persecution against ethnic Chinese Catholics in Indonesia. Accordingly, the BIA dismissed petitioner's appeal. Alexandra has filed a petition for review of the BIA's order.

We have jurisdiction over the petition pursuant to 8 U.S.C. § 1252(a)(1). Our review of the BIA and IJ's decisions, see Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir.

4

2004), is limited to the issues relating to the denial of withholding of removal.[1] We

review questions of law de novo. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir.

2001). Factual findings are reviewed for substantial evidence. See Butt v. Gonzales, 429

F.3d 430, 433 (3d Cir. 2005).

The INA mandates withholding of removal of an alien whose life or freedom

would be threatened on account of a protected ground (such as his ethnicity or religion).

8 U.S.C. § 1231(b)(3)(A). To obtain mandatory withholding of removal under the INA,

Alexandra must "establish by a 'clear probability' that [his] life or freedom would be

threatened in the proposed country of deportation." Zubeda v. Ashcroft, 333 F.3d 463,

469 (3d Cir. 2003). A "'[c]lear probability' means that it is 'more likely than not' that an

alien would be subject to persecution." Id.

Alexandra initially argues that the IJ erred by failing to define what constitutes

persecution. With respect to this contention, we must agree with respondent's position

that the IJ is not required to provide definitions for the legal terms set forth in a decision.

Additionally, to the extent that Alexandra is actually attempting to challenge the BIA's

decision to uphold the IJ's findings that the incidents he experienced did not rise to the

---

[1] Not only are we statutorily precluded from reviewing the determination that the asylum application is untimely, see Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006), but also Alexandra, despite a few references to basic "asylum law" in his opening brief, has waived his claims for asylum and CAT relief. See Fed. R. App. P. 28(a)(8)-(9); Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.").

level of past persecution for purposes of granting his request for withholding of removal, we can find no fault with those determinations given the specifics of the incidents upon which Alexandra's claim for relief rests. See Lie, 396 F.3d at 536. "[T]his court has held that persecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003), quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). While Alexandra's complaints of discrimination and minor criminal acts against him, as well as his friends and family are disturbing, the record does not compel a conclusion contrary to that reached by the agency. Alexandra himself essentially conceded that he has not experienced anything amounting to persecution. See A.R. 42-43; 130; 131 ("So it, truly, nothing happened to me as far as persecution or being hit, but mostly money demand [by street gangs]....". Alexandra thus failed to prove that he suffered past persecution and that he consequently would face an individualized risk of persecution on return to Indonesia. See Jarbough v. Attorney General, 483 F.3d 184, 191 (3d Cir. 2007) ("Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution."); Lie v. Ashcroft, 396 F.3d at 536 (holding that isolated, criminal acts do not rise to the necessary level of persecution).[2]

Alexandra also contends that the IJ and BIA failed to consider whether a pattern or

---

[2] As in Lie, Alexandra's fear of persecution is further undermined by the fact that he has family members, including a son, who safely remain in Indonesia. Cf., 396 F.3d at 537.

practice of persecution of Chinese Christians exists. The IJ, however, specifically noted that Alexandra would be entitled to withholding of removal if he could establish the existence of a pattern or practice of persecution, see A.R. at 50-51, but ultimately determined that the evidence presented in this case did not warrant such a conclusion. Id. at 58-59. It was petitioner's obligation to demonstrate a "pattern or practice of persecution of a group of persons similarly situated to the applicant. . . ." 8 C.F.R. § 208.16(b)(2)(i). The Administrative Record contains, inter alia, various proffered Department of State Reports for 2002 through 2004 concerning the treatment of ethnic Chinese Christians in Indonesia. See A.R. 181-192, 193-207, 351-379, and 380-393. The IJ considered the reports. See I.J.'s Oral Decision at 21-23, A.R. 58-60. See also BIA's Order at 1-2, A.R. 2-3. Although the IJ recognized that there exists discrimination against the Chinese and that a group of extremist Muslims continues with its attempt to make Indonesia a Muslim country, she implicitly found that the evidence did not support a "pattern or practice" finding. Given the IJ's findings, the BIA upheld that determination in the absence of any controlling precedential decision to the contrary.

While we have not conclusively addressed whether a pattern or practice of persecution of ethnic Chinese Christians in Indonesia exists at the present time, see Sukwanputra v. Gonzales, 434 F.3d 627, 637 n.10 (3d Cir. 2006), the IJ could reasonably conclude that these later Department of State Reports do not reflect a pattern or practice of persecution of ethnic Chinese Christians. The State Department's 2004 Report on

7

Human Rights Practices in Indonesia – the most recent official report in the record – notes that "[t]he Government officially promotes racial and ethnic tolerance," and the "[i]nstances of discrimination and harassment of ethnic Chinese Indonesians declined compared with previous years." A.R. 205. Similarly, while the 2004 State Department Report on International Religious Freedom discusses instances of inter-religious violence between Christians and Muslims in Indonesia, it also notes that "[s]ome notable advances in interreligious tolerance and cooperation occurred," A.R. 181, and that "the Government made significant efforts to reduce interreligious violence." A.R. 187. Although Alexandra submitted other record evidence indicating that conditions remain dire throughout Indonesia for individuals similarly situated, this evidence does not compel reversal of the BIA's decision. The agency acted within its discretion in choosing to give greater weight to the State Department's assessment of prevailing conditions in the country. Because the evidentiary record does not compel a contrary conclusion, see Elias-Zacarias, 502 U.S. at 481 n.1, the decision rests upon substantial evidence.

Accordingly, for the foregoing reasons, we will deny the petition for review.

8